NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DENISE L., | ) | |
| | ) | Supreme Court No. S-14877 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3AN-11-00110/ |
| v. | ) | 00111/00114 CN |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT[*] |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1486 – March 19, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

# I.    INTRODUCTION

A mother appeals the trial court's decision at disposition that three of her children continued to be in need of aid. The appeal is moot as to one child, and we thus

---

[*]    Entered under Appellate Rule 214.

decline to address the trial court's decision about this child. We affirm the trial court's decision regarding the other two children because its findings were not clearly erroneous.

## II.    FACTS AND PROCEEDINGS

Denise L.[1] is the mother of five children, Delilah, Cora, Abby, Alec, and Isis; by the time the disposition hearing in the case concluded, the children ranged in age from two to twelve.[2] Abby and Alec are twins with significant mental health disorders; their adjudication and custody are not at issue in this appeal. This appeal concerns only Delilah, Cora, and Isis, all of whom have different fathers; none of the fathers participated in this appeal.

Denise's family has a long history of involvement with the Office of Children's Services (OCS). Denise was in the custody of OCS when she was a child because of neglect and physical abuse by her mother, Selena. OCS previously took custody of Denise's children after receiving reports of neglect. The two oldest girls were in OCS custody from August 2002 until February 2004. OCS again took custody of the children in March 2007; all of the children had been released from OCS's custody by March 2008. Isis was born in 2010, after Denise regained custody of her older children.

OCS continued to receive reports about the family, and it again intervened. Initially the case was treated as "open for services," but OCS decided to take custody of the children in April 2011 after Denise left the children in Selena's care while Denise went out of town. Selena gave the twins the wrong medication, and as a result they appeared "high" when they went to school. OCS had previously expressed concern to Denise about Selena's caring for the children because of Selena's abuse of Denise as a child as well as her inappropriate discipline and supervision of Denise's children, and

---

[1]     We use pseudonyms to protect the privacy of the parties.

[2]     Delilah turned twelve about a week after the hearing started.

because Selena had a history of having a home that was "dirty enough to be a health hazard to children."

In November 2011 Denise entered into a stipulation with OCS. She stipulated that the children were in need of aid due to neglect; she retained legal custody of Delilah and Cora under OCS supervision, and OCS assumed legal custody of the twins and Isis. All of the children except Abby were placed in Denise's physical custody at that time. Delilah, Cora, and Isis continued to live with Denise until they were removed in June 2012. Denise objected to removal and a change in the legal custody of Delilah and Cora; she asked that the court find that the three children were no longer in need of aid and order the children released to her custody. The trial court considered all of the contested issues at the time scheduled for a contested disposition hearing.

The contested hearing was held over three days in late July and August 2012. The trial court heard conflicting testimony about the cleanliness of Denise's home and the condition of the children's clothing. Denise's counselor and psychiatrist testified at the hearing, and both were supportive of her efforts. Both testified about the stress she was under; the psychiatrist said that she had "stress overload" from working full time, attending school full time, and being the single parent of five children, two of whom had special needs. Both professionals testified that she faced additional challenges because of the abuse she suffered as a child.

The court also heard testimony from the OCS social worker about Denise's inadequate supervision of the two older girls as well as concerns that Denise had twice left Isis in the care of Selena after Denise had been told not to do so. Denise justified leaving Isis with Selena by saying that she had no alternative the two times it happened. In addition, a police officer testified about an incident that occurred when Denise left the two older girls unsupervised: A neighbor complained that the girls had vandalized her car by throwing eggs and other food at it; when Denise arrived home, she cursed at the

police officer and made one of the girls go outside in the cold without a coat to look for the other one. Several witnesses testified that Abby had been injured by her siblings and possibly by Denise. The school nurse at Abby's school was concerned about supervision of the children because of Abby's injuries.

At the conclusion of the August 2012 hearing the trial court decided that the children continued to be in need of aid and that removal was in their best interests. The court ordered that the children be placed in OCS custody for "up to two years with a strong plan to reunite." In April 2013, at the request of OCS, the trial court released Isis from OCS custody and placed her with her father.

Denise appeals the trial court's August 2012 decision that Delilah, Cora, and Isis continued to be in need of aid and that removal was in their best interests.

## III.  STANDARD OF REVIEW

We review a trial court's factual findings for clear error.[3] A finding is clearly erroneous if we are "left with a definite and firm conviction that a mistake has been made after a review of the entire record in the light most favorable to the party prevailing below."[4]  "We review de novo whether a trial court's findings satisfy the

---

[3]     *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1111 (Alaska 2010) (citing *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009)).

[4]     *Id.* (citations and internal quotation marks omitted).

requirements of the child in need of aid statute."[5]  "Because it is a matter of judicial policy, mootness presents a question of law."[6]

## IV. DISCUSSION

### A. We Decline To Consider Isis's Case.

The parties agree that the appeal as to Isis is technically moot because OCS placed her with her father and the court subsequently released her from OCS custody. Both Denise and OCS ask us to decide the appeal as to Isis even though it is moot. Denise argues that there are collateral consequences to her; she specifically argues that a finding that Isis was removed from her custody would have collateral consequences in a private custody dispute with Isis's father.  But evidence related to all of the children and their removal would be relevant in a private custody dispute about Isis.  Because we are affirming the trial court's decision as to Cora and Delilah, the information about their removal could be used in the custody litigation no matter what we decided about Isis. As a result, we see no reason to override the judicial policy against deciding moot cases.

### B. The Trial Court Did Not Clearly Err In Finding That Delilah And Cora Continued To Be In Need Of Aid.

After a contested hearing, the trial court decided that Delilah and Cora continued to be children in need of aid.  Denise argues that this finding is clearly erroneous.  OCS contends that Denise cannot question the court's child in need of aid

---

[5]  *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (citing *Carl N. v. State, Dep't of Health & Soc. Servs.*, 102 P.3d 932, 935 (Alaska 2004)).

[6]  *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 993-94 (Alaska 2006) (citing *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005)); *see also In re Joan K.*, 273 P.3d 594, 595-96 (Alaska 2012) (citing *In re Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011)) (stating that application of mootness doctrine is question of law).

finding because she stipulated that the children were in need of aid about six months before the disposition hearing. In the alternative, OCS argues that the trial court did not clearly err in making its findings.

Because of the length of time between the stipulation and the contested disposition hearing, because Denise squarely raised the question whether OCS should have custody of Delilah and Cora, and because the court made a finding that the children continued to be in need of aid after a contested evidentiary hearing, we conclude that Denise can properly ask us to review the trial court's finding that the children continued to be in need of aid regardless of her previous stipulation to that fact.

Denise contends that the finding was clearly erroneous because she had made progress in addressing OCS's concerns. Denise also notes correctly that, as the trial court found, she was participating in all of the services to which OCS had referred her and points to testimony suggesting that the condition of her home had improved. She argues that these facts show improvement after the stipulation, which had allowed her to maintain custody of the children. And she contends that the trial court clearly erred in ordering continuing OCS intervention in her family and removal of the children from her home. But the trial court heard conflicting testimony about improvements (or lack thereof) at the hearing. We will not overturn a trial court's findings based on conflicting evidence;[7] rather, we review the record in the light most favorable to the party prevailing in the trial court.[8]

Even assuming that Denise made improvements in cleanliness, we conclude that the trial court did not clearly err in finding that Cora and Delilah continued to be in

---

[7]     *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (citing *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

[8]     *Id.* (citing *Martin N.*, 79 P.3d at 53).

need of aid.  An area of continuing concern for OCS was the lack of appropriate supervision Denise provided for the children.  In the six months after Denise stipulated that the children were in need of aid, supervision remained a problem.  The trial court heard evidence that police had investigated a report that Delilah and Cora had vandalized a neighbor's car when they were left unsupervised for an indeterminate period of time in March 2012.  Denise's efforts to find appropriate daycare for Delilah and Cora after school ended for the summer in 2012 were also lacking.  It appears that Denise left the children at the Boys and Girls Club but did not formally enroll them in daycare.  Because the facility permitted the children to leave, Cora appeared to be completely unsupervised.  The OCS social worker who worked with the family testified that Denise at times did not know where Cora was.  Furthermore, on two occasions, Denise left Isis with Selena, in direct noncompliance with OCS's instructions.  Finally, Abby's caregivers noted more than once that she had been bruised or otherwise harmed by her siblings, indicating a lack of supervision by Denise.  Although Denise asserts that concerns about Abby were not related to the older girls, a child can be found to be in need of aid when a parent neglects another child in the household.[9]

### C.    The Trial Court Did Not Clearly Err In Deciding That Removal Was In Delilah's And Cora's Best Interests.

Finally, Denise argues that the trial court erred in deciding that removal was in Delilah's and Cora's best interests.  Denise does not contest on appeal that OCS made reasonable efforts to prevent removal.  Instead she argues that whatever concerns OCS may have had about her care of the children, she provided a minimally suitable home so that removal was not warranted.  She also argues that her switch to online classes would result in better supervision for the children.

___

[9]     AS 47.10.011(9).

The trial court found that continued placement in Denise's home would be contrary to the welfare of the children "based on the history of [the] whole case." The court expressed concern about Denise's permitting Selena to care for the children. The court found that Denise had "continued to avail herself of the services that [had] been provided," although the court was "not sure" about the effectiveness of the services. Under the trial court's order, the children were committed to OCS's custody "for up to two years with a strong plan to reunite."

At the time of the disposition hearing, Denise was living with Selena. Because of the numerous concerns about Selena and Denise's inability to recognize the danger Selena posed to her children, the trial court could reasonably conclude that removal from Denise's home was justified. And Denise's plan to change to online classes did not address the concern about Selena's caring for the children or even about concerns related to the older girls. Denise was still working and appeared unable to appreciate the need to provide adult supervision for the older girls. The court thus did not clearly err in finding that continued placement with Denise was contrary to the children's welfare.

## V.    CONCLUSION

We AFFIRM the trial court's decision that Delilah and Cora continued to be in need of aid and that continued placement with Denise was contrary to their welfare.